**VIRGINIA & AMBINDER, LLP**
*Counsel for Defendant Benefit Funds*
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
Maura Moosnick, Esq.

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re: | Case No. 24-20009 (JNP) |
| | Chapter 11 |
| KIMO Tile @ Marble, LLC | |
| d/b/a KIMO Tile, LLC, | |
| | The Honorable Jerrold N. Poslusny |
| Debtor. | |
| | Hearing Date: February 20, 2025 @ 10:00 am |

**OBJECTION OF THE LOCAL 7 TILE BENEFIT
FUNDS TO SMALL BUSINESS DEBTOR'S PLAN OF REORGANIZATION**

The Local 7 Tile Benefit Funds (or the "Benefit Funds")[1] hereby object to the Debtor KIMO Tile @ Marble, LLC d/b/a KIMO Tile, LLC's ("Debtor") Small Business Debtor's Plan of Reorganization (the "Plan") (Dkt. 51) for the following reasons:

**Relevant Background**

1. At all relevant times, the Debtor was bound to a collective bargaining agreement (the "CBA") with the Tile Setters and Tile Finishers Union of New York and New Jersey, Local

---

[1] Consisting of: Trustees of the Local 7 Tile Industry Welfare Fund; Trustees of the Local 7 Tile Industry Annuity Fund; Trustees of the Tile Layers Local Union 52 Pension Fund; Trustees of the Local 7 Tile Industry Retiree Welfare Fund; Trustees of the Local 7 Tile Industry Vacation Fund; Trustees of the Local 7 Tile Industry Supplemental Fund; Trustees of the Local 7 Tile Industry Promotional Fund; Trustees of the Local 7 Tile Industry Training Fund; Trustees of the Local 7 Tile Industry Building Fund; Trustees of the Local 7 Tile Industry Defense Fund; Trustees of the Local 7 Tile Industry Local Political Action Committee; Trustees of the Bricklayers & Trowel Trades International Pension Fund; The International Masonry Institute; and the Trustees of the Bricklayers and Allied Craftworkers Political Action Committee.

1

Union No. 7 of the International Union of Bricklayers and Allied Craftworkers (the "Union"). The CBA required the Debtor to make specified hourly contributions to the Benefit Funds in connection with all work performed in the trade and geographical jurisdiction of the Union.

2. In October 2023, the Benefit Funds and the Debtor entered into a settlement in the amount of $803,728.97 relating to an audit covering 2014-2017 and the Debtor's self-reported post-audit delinquencies.[2] Pursuant to the settlement, the Debtor was to immediately pay $50,000, the Benefit Funds would receive $117,836.19 via joint checks, and the Debtor was to pay the balance in equal monthly installments over nine years, which came out to be a little less than $6,000 per month. Sasha Kissondath ("Sasha"), the Debtor's principal, furnished a personal confession of judgment securing the settlement.

3. The Debtor stayed current on the settlement until August 2024, when it failed to pay newly accruing contribution obligations. This trend continued into September 2024 and included a failure to pay the September 2024 monthly installment. In September 2024, counsel for the Benefit Funds initiated enforcement of the corporate and personal confessions of judgment securing the settlement. On October 9, 2024, the Debtor filed its Chapter 11 petition.

4. On December 20, 2024, the New Jersey Superior Court issued an order to enter judgment against Sasha in the amount of $658,683.18 on the basis of the defaulted settlement. On January 23, 2025, the judgment was entered as an enforceable statewide judgment lien.

5. The Benefit Funds have a separate fraud action pending against the Debtor and Sasha in his individual capacity seeking recovery of all delinquent post-settlement amounts, styled

---

[2] The settlement amount represented a principal deficiency contained in the 2014-2017 audit of $130,598.25 that was based on payroll, a principal deficiency contained in the 2014-2017 audit of $59,112.05 that was based on payments to New Image Flooring, interest thereon of $65,092.81, audit costs of $24,900, attorneys' fees of $116,815.82, self-reported delinquencies for October 1, 2017 through September 30, 2021 of $214,925.34, interest thereon of $23,376.27, and amortized interest at 7.25% in the amount of $168,908

2

*Trustees of the Local 7 Tile Industry Welfare Fund, et al. v. Kimo Tile @ Marble, Limited Liability Company, et al.*, Index No. 23-cv-07377. This action was brought, in part, by allegations made to the Union by three members that Sasha had required them to work off the books. These allegations were corroborated by copies of personal checks issued by Sasha, some of which the members stated had bounced. The Debtor unsuccessfully sought to extend the automatic stay to that action. When that failed, and the Benefit Funds continued to proceed with discovery in that matter, Sasha filed a petition for bankruptcy on the morning of his scheduled deposition.

6. In that pending action, the Debtor failed to furnish records, compelling the Benefit Funds to issue third-party subpoenas. Using documents obtained from TD Bank and Paychex, on September 30, 2024, the Benefit Funds' auditors an audit report of the Debtor covering October 1, 2017 through December 31, 2023. The auditors also examined Sasha's personal accounts for the period October 1, 2017 through May 25, 2024.

### The Bankruptcy Proceeding

7. On October 9, 2024, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Code"). *See* Dkt. 1. By filing for Chapter 11, the Debtor automatically stayed the Benefit Funds' collection actions against the Debtor, including the Benefit Funds' pending action against the Debtor and attempts to enforce the corporate confession of judgment executed by the Debtor to secure the 2023 settlement.

8. On January 7, 2025, the Debtor filed the Plan. *See* Dkt. 51.

9. On January 8, 2025, the Court entered an Order Setting Deadlines and Scheduling a Confirmation Hearing, which was scheduled for February 20, 2025. *See* Dkt. 52.

10. Throughout the Plan, the Debtor intends to use its cash flow to pay its normal monthly operating expenses together with, *inter alia*, the Benefit Funds' priority claim over seventy-two (72) months without interest. *See* Dkt. 51 at 9.

11. As discussed in more detail below, the Plan is not confirmable because the plan is not feasible and the Plan was filed in bad faith.

## Objections

12. Bankruptcy Code Section 1129 contains the standards for confirmation of a plan under Chapter 11. 11 U.S.C. § 1129; *see In re Sound Radio, Inc.*, 93 B.R. 849, 852 (Bankr. D.N.J. 1988). In order for a plan of reorganization to be confirmed by the Court, it must generally comply with each and every one of the thirteen requirements set forth in Section 1129(a).[3] *See Kane v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 843 F.2d 636, 648 (2d Cir. 1988). The burden of establishing these requirements lies with the proponents of the plan. *In re Greate Bay Hotel & Casion, Inc.*, 251 B.R. 213, 221 (Bankr. D.N.J. 2000). Further, while a plan's proponent must satisfy its duty by proving compliance, "[t]he Code imposes an independent duty upon the court to determine whether a plan satisfies each element of § 1129, regardless of the absence of valid objections to confirmation." *Id.* (citing *In re Bolton*, 188 B.R. 913, 915 (Bankr. D. Vt. 1995)). In making this determination, the bankruptcy court "must consider the entire plan in the context of … the particular facts and circumstances [of the case]." *In re D & F Construction, Inc.*, 865 F.2d 673, 675 (5th Cir. 1989).

13. "[A] plan proponent has the affirmative burden of proving that its plan satisfies the provisions of § 1129(a) by the preponderance of the evidence." *In re Surfango, Inc.*, 2009 Bankr.

---

[3] One of those prerequisites, 11 U.S.C. § 1129(a)(8), need not be satisfied if the requirements of Section 1129(b) are met.

4

LEXIS 4172, at *29 (Bankr. D.N.J. Dec. 18, 2009) (quoting *In re Union Meeting Partners*, 165 B.R. 553, 574 (Bankr. E.D. Pa. 1994), *aff'd*, 52 F.3d 317 (3d Cir. 1995).

14. Where a class has rejected the plan, the court may confirm the plan over their objection only if the plan does not discriminate unfairly and is fair and equitable. *In re Surfango, Inc.*, 2009 Bankr. LEXIS 4172, at *22 (citing 11 U.S.C. § 1129(b)(1).

15. Further, the court may confirm a plan only if it has been proposed in good faith. *In re Surfango, Inc.*, 2009 Bankr. LEXIS 4172, at *22 (citing § 1129(a)(3). Courts analyze: (1) whether the plan serves a valid bankruptcy purpose, *e.g.*, by preserving a going concern or maximizing value, and (2) whether the plan is proposed to obtain a tactical litigation advantage. *In re Surfango, Inc.*, 2009 Bankr. LEXIS 4172, at *22 (citing *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 119–20 (3d Cir. 2004); *In re SGL Carbon Corp.*, 200 F.3d 154, 160 (3d Cir. 1999)).

**A. The Plan Is Not Feasible**

16. A court shall confirm a plan only if, *inter alia*, it "has been proposed in good faith and not by any means forbidden by law[,] and if it is feasible. *In re Am. Capital Equip., LLC*, 688 F.3d 145, 155 (3d Cir. 2012) (citing 11 U.S.C §§ 1129(a)(3), (11); *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 243 n.59 (3d Cir. 2004) (interpreting 11 U.S.C. § 1129(a)(11)). The Debtor has the burden of proving that a disclosure statement is adequate, including showing that the plan is confirmable or that defects might be cured or involve material facts in dispute. *In re Am. Capital Equip.*, 688 F.3d at 155 (citing *In re Curtis Ctr. Ltd. P'ship*, 195 B.R. 631, 638 (Bankr. E.D. Pa. 1996).

17. A plan is confirmable only if it is feasible, that is, if "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the

5

debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." *In re Am. Capital Equip.*, 688 F.3d at 155–56 (quoting 11 U.S.C. § 1129(a)(11). Even a planned liquidation "must be feasible." *In re Am. Capital Equip.*, 688 F.3d at 156 (quoting *In re Calvanese*, 169 B.R. 104, 107 (Bankr. E.D. Pa. 1994).

18. Although 11 U.S.C. § 1129(a)(11) does not require a plan's success to be guaranteed, the plan must nevertheless propose "a realistic and workable framework[.]" *In re Am. Capital Equip.*, 688 F.3d at 156 (quoting *In re Brice Road Devs.*, 392 B.R. 274, 283 (B.A.P. 6th Cir. 2008)). In other words, the plan must be "reasonably likely [to] succeed[] on its own terms without a need for further reorganization on the debtor's part." *In re Am. Capital Equip.*, 688 F.3d at 156 (quoting *In re Applied Safety*, 200 B.R. 576, 584 (Bankr. E.D. Pa. 1996)); *see also In re Quigley Co., Inc.*, 437 B.R. 102, 142 (Bankr. S.D.N.Y. 2010) (plan was not feasible where funding source was "speculative at best and visionary at worst").

19. Courts in this Circuit apply a six factor test to determine whether a plan is feasible: (1) the adequacy of the debtor's capital structure; (2) the earning power of its business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan. *In re Surfango, Inc.*, 2009 Bankr. LEXIS 4172, at *31 (citing *In re Greate Bay Hotel & Casino, Inc.*, 251 B.R. 213, 220–26 (Bankr. D.N.J. 2000).

20. Here, this Court should find that the Plan is not feasible.

21. The Debtor was unable to keep up with its prior payment plan to the Benefit Funds with monthly payments of less than $6,000.

6

22. The Debtor blames subpoenas served by the Benefit Funds for its inability to keep up with its monthly payments, which were served solely as a result of the Debtor's own failure to comply with routine discovery demands in a case under Section 515 of the Employee Retirement Income Security Act. Such routine enforcement and discovery is entirely likely to occur again for post-confirmation debts, based on the Debtor's past performance.

23. The Debtor is a historically bad payer, having ever paid less than 6.5% of contributions to the Benefit Funds on time and having ever paid less than 61% of contributions within 120 days.

24. The Debtor has previously chronically underreported contributions and admits that it continued to do so even after filing for bankruptcy despite enjoying the protections of its Chapter 11 filing.

25. The Benefit Funds' potential recovery may only minimally offset the anticipated cost of enforcing the plan if it is to be approved, because the day-to-day enforcement of the Debtor's obligations under the plan will fall on creditors such as the Benefit Funds and if past performance is any indicator, extensive enforcement activity will be required.

26. The Plan contains labor cost projections based on 32% of revenue, but fails to explain why this is realistic when it is not clear whether that actually aligns with the Debtor's bidding practices on projects and the Plan does not take into account the Debtor's historical practice of using subcontractors to hide hours and using Sasha as a conduit for off-the-books wage payments.

27. Further, the Benefit Funds have a statewide judgment lien against Sasha in the amount of $658,683.18 and as of February 11, 2025, continued to litigate the ERISA fraud case against Sasha, seeking liability in excess of $1.5 million; the plan did not account for these risks

despite the fact that Sasha is the sole active managing member of Kimo. The Plan also does not account for Sasha's bankruptcy filing as of February 12, 2025.

28. In *The Matter of Tracey Service Co., Inc.,* 17 B.R. 405, 409 (Bankr. E.D. Pa. 1982), the court found no "reasonable likelihood of reorganization" when the debtor had little to no property, no accounts receivable being collected, no unencumbered assets, and was not generating any income. The court summarized: "[t]o establish a reasonable likelihood of reorganization, the proposed rehabilitation must be more than a nebulous venture." *Id.* at 410 (citation omitted).

29. Similar to *Tracey Service Co.*, the Debtor's plan is not more than a "nebulous venture."

30. Based on the Debtor's history, the plan will likely be followed by liquidation or the need for further financial reorganization. *See In re Diocese of Camden*, 653 B.R. 309, 344 (Bankr. D.N.J. 2023) (holding that a court shall confirm a plan only if confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan).

31. The Debtor's plan is not feasible, and for the reasons stated above, must not be confirmed.

**B. The Plan was Proposed in Bad Faith**

32. A plan is confirmable only if it is proposed in good faith. *In re Am. Capital Equip.*, 688 F.3d at 156 (quoting 11 U.S.C. § 1129(a)(3)). In analyzing whether a plan has been proposed in good faith under 11 U.S.C. § 1129(a)(3), "the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objective and purposes of the Bankruptcy Code." *In re Am. Capital Equip.*, 688 F.3d at 156 (quoting *In re PWS Holding Corp.*,

8

228 F.3d 224, 242 (3d Cir. 2000)). Specifically, under Chapter 11, the two "recognized" policies, or objectives, are "preserving going concerns and maximizing property available to satisfy creditors[.]" *In re Am. Capital Equip.*, 688 F.3d at 156–57 (citing *Toibb v. Radloff*, 501 U.S. 157, 163 (1991)).

33. More generally, the Bankruptcy Code's objectives include: "giving debtors a fresh state in life," *Walters v. U.S. National Bank of Johnstown*, 879 F.2d 95, 98 (3d Cir. 1989), "discourage[ing] debtor misconduct," *id.*, "the expeditious liquidation and distribution of the bankruptcy estate to its creditors," *Integrated Solutions, Inc. v. Service Support Specialties*, 124 F.3d 487, 489 (3d Cir. 1997), and achieving fundamental fairness and justice. *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 339–43 (3d Cir. 2006).

34. Courts in this Circuit view a good faith plan as one that "(1) fosters a result consistent with the [Bankruptcy] Code's objective; (2) has been proposed with honesty and good intentions and with a basis for expecting that reorganization can be effected; and (3) [exhibited] a fundamental fairness in dealing with the creditors." *In re W.R. Grace & Co.*, 729 F.3d 332, 346 (3d Cir. 2013) (quoting *In re Genesis Health Ventures, Inc.*, 266 B.R. 591, 609 (Bankr. D. Del. 2001)).

35. Here, the Plan was not filed in good faith.

36. The Debtor file the Petition less than two weeks following the issuance of a final audit report based in part upon the discovery of over $1.7 million in off-the-books wage payments that the Debtor routed through Sasha. The filing of the Petition was to prevent further discovery into these fraudulent acts, which is further corroborated by Sasha's parallel filing on the morning of a scheduled deposition.

37. The Debtor's Plan provides for continued management and profit by the same managing member whose actions have put the Debtor and Creditors in their current position by virtue of the Debtor's underreporting and obscuring the payment of wages and income.

38. Based on these intentions, the Plan itself was also filed in bad faith as it fails to "fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re PWS Holding Corp.*, 228 F.3d at 242.

**C. The Play Should Not Be "Crammed Down" Under Section 1129(b)**

39. Pursuant to Section 1129(a)(8), a play may only be confirmed if each class of creditors is unimpaired or has accepted the plan. However, if this requirement is not met, under certain circumstances a plan may be "crammed down" and confirmed nonetheless if it satisfies all of the other confirmation requirements set forth in Section 1129(a), including the requirement that if a class of creditors is impaired, at least one impaired class accepts the plan. 11 U.S.C. § 1129(a)(10). Section 1129(b) sets out the requirements for "cram down" on dissenting impaired class. 11 U.S.C. § 1129(b).

40. Under a Chapter 11 reorganization plan all claims are divided into classes. A confirmation hearing is held to determine if each class has accepted or rejected the plan. 11 U.S.C. § 1129(a)(8). If a class rejects the plan, it can still be confirmed, if at least one class of non-insider claims that is impaired under the plan has accepted the plan and the plan complies with the requirements of § 1129(a). 11 U.S.C. § 1129(a) and (b). A plan that is confirmed despite the rejection by a class is called a "cram down". *John Hancock Mut. Life Ins. Co. v. Route 37 Business Park Assocs.*, 987 F.2d 154, 157 (3rd Cir. 1993). 1

41. In order for a debtor to prevail in a "cram down", the debtor must establish by clear and convincing evidence that the treatment of each class of nonaccepting impaired creditors under

the plan is "fair and equitable" as defined under § 1129(b)(1) and (2)(A). *See In re Birdneck Apartment Assocs., II, L.P.*, 156 Bankr. 499, 507 (Bankr. E.D.Va., 1993).

42. Here, the Benefit Funds have unsecured general claims that are impaired. The plan does not provide the proposed breakdown of the distribution of payments toward general unsecured claims.

43. Therefore, at least one impaired class is rejecting the plan and because the plan does not set forth proposed payments, the Debtor has failed to establish by clear and convincing evidence that the plan is "fair and equitable" and thus a cram down would fail.

44. The Benefit Funds posit that they and other Creditors would be better served by a liquidation of the Debtor, which admits that it has outstanding receivables available for distribution in excess of $500,000.

## CONCLUSION

For the foregoing reasons, the Benefit Funds respectfully submit that the Court should not confirm the Plan.

Dated: New York, New York
February 12, 2025

Respectfully submitted,

**VIRGINIA & AMBINDER, LLP**
Counsel for the Benefit Fund Defendants

By: */s/ Maura Moosnick*
Maura Moosnick, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080
mmoosnick@vandallp.com

11